FIDELITY NATIONAL TITLE INSURANCE COMPANY OF TENNESSEE, A
TENNESSEE CORPORATION v. WARREN KIDD; W. K. ASSOCIATES, INC.,
A NORTH CAROLINA CORPORATION; AND H. CHRISTOPHER SEARS, JOINTLY
AND SEVERALLY

No. 8918SC1189

(Filed 7 August 1990)

Insurance § 148 (NCI3d)— title insurance—defense provided
voluntarily—no recovery

      Summary judgment was properly entered for defendants
in an action by a title insurance company to recover defense
and settlement funds where the policy required that the in-
sureds must suffer an actual loss and the purchaser gave the
seller a promissory note which conditioned payment on final
clearance of title. Based upon the novel factual aspects of
this case, no challenge to the title could give rise to the title
insurer's liability since it would always fall under the exclu-
sion; the title insurance company voluntarily provided a defense
and settlement funds for the purchaser and seller, and thus
the defendants' actions could not have caused the title in-
surance company's expense.

Am Jur 2d, Insurance §§ 525-527.

APPEAL by plaintiff from orders entered 7 July 1989 by *Judge
Lester P. Martin* in GUILFORD County Superior Court. Heard in
the Court of Appeals 4 May 1990.

*Booth, Harrington, Johns & Campbell, by E. Jackson
Harrington, Jr. and David B. Puryear, Jr., for plaintiff-appellant.*

*Adams Kleemeier Hagan Hannah & Fouts, by Thomas W.
Brawner and James W. Bryan, for defendant-appellees Warren
Kidd and W. K. Associates, Inc.*

*Tuggle Duggins Meschan & Elrod, P.A., by Robert C. Cone,
for defendant-appellee H. Christopher Sears.*

GREENE, Judge.

      The plaintiff, Fidelity National Title Insurance Company of
Tennessee (formerly "Southern Title Insurance Company"), brought
an action in negligence and contract against the defendants Warren

Kidd; W. K. Associates, Inc.; and H. Christopher Sears. Plaintiff appeals from summary judgment entered for defendants.

Warren Kidd through his company W. K. Associates, Inc. (Kidd), performed title abstract services for attorneys. Kidd also was Fidelity National Title Insurance Company's (National) agent for purposes of selling title insurance policies. Christopher Sears (Sears) was an attorney specializing in property matters. Sears regularly hired Kidd as his title abstractor.

On 14 March 1985, International Associates (IA) closed a purchase of property sold by Arnetta C. Gortman. At closing, IA paid no cash. Rather, it gave Gortman a promissory note for $650,000.00 "or such proportionate amount as her ultimate interest in property may bear to 100% with such payment to occur upon final clearing of title." This note was secured by a deed of trust to the property having no warranties of title.

The day following closing, IA's representative contacted Sears about doing title work on the property. Sears hired Kidd to do a title search and abstract. Kidd conducted the search, and Sears reviewed and approved the abstract. On 20 March 1985, Kidd, now acting as National's agent, provided a title insurance policy, based on the title report signed by Sears, to IA as owner and Gortman as "mortgagee." However, Kidd and Sears neglected to mention some outstanding liens or encumbrances on the property which proved to be clouds on the title.

The title insurance policy provided in pertinent part:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDI-TIONS AND STIPULATIONS HEREOF, SOUTHERN TITLE INSURANCE COMPANY, OF KNOXVILLE, TENNESSEE, A TENNESSEE CORPORA-TION, herein called the Company, insures, as of Date of Policy shown in Schedule A, against *loss or damage*, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, *sustained or incurred by the insured* by reason of:

1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;

2. Any defect in or lien or encumbrance on such title;

3. Lack of a right of access to and from the land; or

4. Unmarketability of such title.

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy:

. . .

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) *resulting in no loss or damage to the insured claimant*; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

(Emphases added).

When IA later found itself faced with litigation on the title of the property, it called National to defend. National initially refused, but it later provided defense and settlement funds. It is undisputed that National was aware of the conditional promissory note at the time it chose to defend IA's and Gortman's interests. Eventually, all of the litigation was settled or otherwise terminated leaving IA with clear title to the property, but not before National, IA and Gortman each had expended substantial settlement funds.

National sued Sears alleging his negligent title search resulted in its expenses in defending IA and Gortman's interests. It sued Kidd alleging breach of contract, negligent title search, and negligent performance of agent's duties. The trial court granted defendants' motions for summary judgment.

---

The issue presented is whether National's cause of action against the defendants should fail because of a lack of proximate causation between defendants' alleged negligence or breach of contract and

National's damages if National had no obligation to provide a defense or pay any loss to IA or Gortman under the terms of the policy.

Defendants argue that even if they were negligent or breached a contractual duty to National, they have no liability to National because National had no liability to pay or defend its insureds because the matters raised by the insureds were excluded from coverage. If we determine, taking the evidence in the light most favorable to National, that the matters raised by the insureds were excluded from coverage, then National provided a defense and settlement funds to the insureds voluntarily, and the trial court correctly granted defendants' motion for summary judgment. If National was not obligated to defend the insureds, then any negligence of the defendants could not have proximately caused National any harm.

Generally, title insurance is considered an indemnification agreement for title. D. Burke, *Law of Title Insurance* § 2.2 (1986); *see also* 9 J. Appleman, *Insurance Law and Practice* § 5201 (1981). However, some courts regard a title insurance policy as a guarantee by the insurer as to the state of the title. *Id.; see also Burke*, § 1.3.1, at 21 (title policy considered as "a warranty that the state of the title is as reflected on the face of the policy"). We need not resolve the issue of whether this title policy was an indemnification agreement or a guarantee as to the state of the title, since under either construction, the insureds must have suffered an actual loss.

If treated as an indemnity agreement, the policy provides in both the insuring section and the exclusion section that the insureds must suffer an actual loss. The insuring language of the policy provides that the company insures against "loss or damage . . . sustained or incurred by the insured. . . ." This language has generally been interpreted to require that the insured suffer an actual loss. *See Burke*, § 1.3.1, at 20. One of the policy exclusions provides that there is no coverage for "[d]efects, liens, encumbrances, adverse claims, or other matters . . . resulting in no loss or damage to the insured claimant." If the policy is treated as a guaranty of the state of the title, the same exclusion clause is applicable.

Here, IA gave Gortman a promissory note which conditioned payment on final clearance of title. IA had not paid Gortman for any interest in the property, and it would not be obligated to pay Gortman for any interest which could be harmed by any challenges to its title since it would pay Gortman only for that

CONTINENTAL TELEPHONE CO. v. GUNTER

[99 N.C. App. 741 (1990)]

which Gortman had to sell. IA could never suffer a loss or damage. National argues that IA would have lost the benefit of its bargain had National not provided a defense. However, all IA bargained for here was to receive and pay for whatever property Gortman had clear title to sell. Therefore, IA suffered no actual loss.

Gortman's policy with National protecting it as the purported "mortgagee" contained the same insuring and exclusion language. Gortman accepted a promissory note which specified conditional payment and a deed of trust without warranty of title. By these instruments, IA would only pay Gortman to the extent the title of the property proved clear. Gortman bargained only for such payment, and thus any diminution in title could not have been a loss. Therefore, Gortman suffered no loss.

Based upon the novel factual aspects of this case, i.e., the conditional nature of the promissory note, no challenge to the title could give rise to National's liability since it would always fall under the exclusion. National's officers admitted their knowledge of the promissory note at the time IA demanded a defense, but they inexplicably ignored it. National voluntarily provided a defense and settlement funds for IA and Gortman, and thus the defendants' actions could not have caused National's expense in so providing.

Affirmed.

Judges WELLS and ORR concur.